Thomas V. FLOCCO, Appellant,

v.

**STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, et al., Appellees.**

No. 98–CV–135.

District of Columbia Court of Appeals.

Argued Oct. 12, 1999.

Decided May 25, 2000.

Larry Klayman, with whom Paul J. Orfanedes, Washington, DC, was on the brief, for appellant.

Allan Horwich, with whom Heidi Dalenberg, Jeffrey J. Bushofsky, Chicago, IL, Barbara K. Heffernan, and Debra Ann Palmer, Washington, DC, were on the brief, for appellee State Farm Mutual Automobile Insurance Company.

James W. Ducayet, with whom Walter C. Carlson, Chicago, IL, was on the brief, for appellees Edward B. Rust, Jr. and Vincent J. Trosino.

Richard L. Brusca, with whom Donna L. Wilson, Washington, DC, was on the brief, for appellees President William J. Clinton and Robert S. Bennett.

Before SCHWELB, FARRELL, and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

## I.

### BACKGROUND

This case had its genesis in the alleged encounter between Paula Corbin Jones and then-Governor William Jefferson Clinton at the Excelsior Hotel in Little Rock, Arkansas on May 8, 1991. On May 6, 1994, Ms. Jones filed suit against Mr. Clinton in the United States District Court for the Eastern District of Arkansas, alleging, *inter alia,* that he had made inappropriate sexual advances towards her in the hotel

room and that, upon learning of the suit approximately three years after that encounter, the President had made false and defamatory statements regarding Ms. Jones' character and veracity. Mr. Clinton responded to the suit by asking that all proceedings be stayed until after the expiration of his term as President, but the Supreme Court held that he was not entitled to such a stay. *Clinton v. Jones*, 520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). The trial court subsequently granted the President's motion for summary judgment, *Jones v. Clinton*, 990 F.Supp. 657 (E.D.Ark.1998), but the case was ultimately settled while Ms. Jones' appeal was pending. *See Jones v. Clinton*, 161 F.3d 528 (8th Cir.1998).

The present litigation concerns the applicability to the *Jones* suit of a liability insurance policy issued to Mr. Clinton in 1992 by State Farm Fire and Casualty Company (State Farm Fire). The policy provides coverage, *inter alia*, for personal injury caused by the insured's "libel, slander or defamation of character," but excludes coverage for damages the insured is required to pay if the insured acted "with the specific intent to cause harm or injury." The policy also excludes coverage for "any loss caused by illegal discrimination." In June 1995, the President's attorney, Robert S. Bennett, Esquire, requested State Farm Fire to determine whether the policy provided coverage to the President in connection with Ms. Jones' action. State Farm Fire responded affirmatively to Mr. Bennett's inquiry and provided reimbursement for certain expenses incurred in the defense of the *Jones* litigation.

According to the complaint in this case, the plaintiff, Thomas V. Flocco, is the holder of a personal liability insurance policy issued to him by State Farm Fire. Mr. Flocco has brought this suit against three categories of defendants:

1. State Farm Mutual Automobile Insurance Company (State Farm Mutual), which is the parent company of State Farm Fire, and which owns all of State Farm Fire's stock;

2. Edward Rust and Vincent Trosino, who are alleged to be directors and high-ranking officers of State Farm Fire and of State Farm Mutual; and

3. President Clinton and his attorney, Robert S. Bennett.

State Farm Fire was not joined as a defendant and is not a party to the case.

Characterizing his suit as a "policyholder's derivative action,"[1] Flocco claims in substance that Ms. Jones' allegations against President Clinton did not fall within the coverage of the President's policy. Flocco further alleges, on information and belief, that all of the defendants knew that this was so, but that Rust and Trosino nevertheless authorized the payment of more than $1,100,000 in State Farm Mutual's funds to reimburse President Clinton and Mr. Bennett for expenses incurred or to be incurred in defending the President against Ms. Jones' suit. Flocco asserts that the conduct of defendants Rust and Trosino constituted a waste of corporate assets. He also alleges that the individual defendants converted money belonging to State Farm Mutual to the use and benefit of defendants Clinton and Bennett; Rust and Trosino are alleged to have participated in this conversion by causing the money to be wrongfully paid, and Clinton and Bennett are said to have converted the money by accepting it notwithstanding their alleged knowledge that they had no right to receive it.

All of the defendants filed pretrial motions to dismiss the complaint. On December 17, 1997, the trial judge issued a 23–page written order disposing of the case. The judge dismissed the plaintiff's claims against State Farm Mutual without preju-

---

1. In a subsequent filing, Flocco's attorney described the suit, more accurately, as a "dou- ble derivative action."

dice. The judge noted that Flocco had not made a pre-suit demand for remedial action by the directors either of State Farm Mutual or of State Farm Fire. The judge further noted that Flocco had failed to join State Farm Fire as a defendant in the action, and that State Farm Fire was an indispensable party. The judge concluded that these omissions precluded Flocco from maintaining a policyholder's derivative action against State Farm Mutual. The judge dismissed, with prejudice, Mr. Flocco's claims against President Clinton and Mr. Bennett, holding as a matter of law that the conduct of these defendants, as described in the complaint, did not constitute conversion of State Farm Mutual's property. Finally, the judge dismissed, also with prejudice, Flocco's claims against defendants Rust and Trosino, holding that the court lacked personal jurisdiction over these defendants under the District's long-arm statute.

Flocco now asks this court to reverse the decision of the trial court and to order the reinstatement of his claims against all defendants. With respect to Rust and Trosino, we conclude that the dismissal of the action should have been with prejudice as to further proceedings in the District of Columbia but without prejudice as to proceedings in a forum with personal jurisdiction over these defendants. In all other respects, and especially in light of events that have transpired since the entry of the trial judge's decision, we affirm.

## II.

### THE VIABILITY OF FLOCCO'S DERIVATIVE ACTION

#### A. *The procedural issues.*

On appeal, Flocco asserts essentially that he has complied with all prerequisites to the institution of his action, that any defects could readily have been cured by amendment of his pleading, and that the trial judge erred in dismissing the action. The defendants respond that Flocco was not entitled to maintain this derivative action because, assuming that such a suit may be brought by a policyholder at all,[2] Flocco has failed to comply with two essential procedural prerequisites. First, the defendants claim that Flocco was required, as a precondition to maintaining a derivative action, to make a demand for remedial action on the directors both of State Farm Mutual and of State Farm Fire. The defendants assert that Flocco failed to make the requisite demand on either company before instituting his action; that although Flocco alleged in his complaint that a demand on State Farm Mutual would have been futile, this allegation was insufficient as a matter of law; that, in any event, Flocco waived his claim of futility, after the entry of the trial court's order, by making demands both on State Farm Fire and on State Farm Mutual; and that for all of these reasons, the suit cannot be maintained. Second, the defendants contend that State Farm Fire was an indispensable party to Flocco's action, that

---

**2.** State Farm Mutual argued in the trial court that Flocco lacked standing to bring the action. State Farm Mutual asserted that Flocco's action was legally different from a stockholder's derivative suit, because, according to State Farm Mutual, an insured's legal relationship to his insurer is more analogous to a relationship between a creditor and a debtor than it is to one between a stockholder and a corporation. Relying upon *Lower v. Lanark Mut. Fire Ins. Co.*, 151 Ill.App.3d 471, 104 Ill.Dec. 341, 502 N.E.2d 838, 840 (1986), however, the trial judge concluded that under Illinois law, "the owner of a valid policy issued by a mutual insurance company has standing to bring a derivative action, not in his own right, but on behalf of the corporation in the same way a shareholder can bring such an action against a corporation." *See also* Theodore Allegaert, Comment, *Derivative Actions by Policyholders on Behalf of Mutual Insurance Companies*, 63 U. CHI. L. REV. 1063 (1996). While maintaining its disagreement with the trial judge's disposition of this issue, State Farm Mutual has explicitly declined to ask us to reverse the judge's ruling on the question of standing. We take the case as it has been presented to us, and we express no opinion with respect to the viability of a policyholder's derivative action either under Illinois law or under District of Columbia law.

Flocco failed to join State Farm Fire as a defendant, and that the case therefore cannot proceed. We address these contentions in turn.

## B. *Choice of law.*

■ Both State Farm Mutual and State Farm Fire are companies organized under the laws of the State of Illinois. The trial judge held, and we agree, that under the District's choice-of-law rules, the viability of Flocco's derivative action must therefore be determined by application of Illinois law. *See Labovitz v. The Washington Times Corp.,* 900 F.Supp. 500, 503 (D.D.C. 1995), *aff'd,* 335 U.S.App.D.C. 296, 172 F.3d 897 (1999); *cf. Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 548–49, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (in derivative actions, the question whether a stockholder has standing to sue on behalf of the corporation is controlled by the law of the state of organization).

## C. *The demand requirement, futility, and waiver.*

■ "The directors of a corporation and not its shareholders [3] manage the business and affairs of the corporation." *Levine v. Smith,* 591 A.2d 194, 200 (Del.1991). In a derivative action, the shareholder seeks to assert, on behalf of the corporation, a claim belonging not to him but to the corporation. *Id.* "The right of a stockholder to file a bill to litigate corporate rights is, therefore, solely for the purpose of preventing injustice where it is apparent that material corporate rights would not otherwise be protected." *Zapata Corp. v. Maldonado,* 430 A.2d 779, 784 (Del.1981)

(quoting *Sohland v. Baker,* 141 A. 277, 282 (Del.1927)).

■ "The decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation." *Levine, supra,* 591 A.2d at 200 (quoting *Spiegel v. Buntrock,* 571 A.2d 767, 773 (Del.Super.Ct.1990)). Accordingly, "[b]efore a stockholder should be permitted to bring suit ... he should show to the satisfaction of the court that he has exhausted all of the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity [with] his wishes." *Scalzo v. Commercial Trust & Sav. Bank,* 239 Ill.App. 330, 338 (1925). Specifically, the stockholder must either

1. allege that he has made a demand upon the directors of the corporation requesting that they seek the relief that he proposes to obtain through his derivative action, and that the directors have wrongfully refused his demand; or

2. allege facts showing that such a demand would be futile because the directors are not disinterested or did not validly exercise their business judgment.

*See* 805 Ill. Comp. Stat. 5/7.80 (b) (2000) [4]; *Miller v. Thomas,* 275 Ill.App.3d 779, 211 Ill.Dec. 897, 656 N.E.2d 89, 93–96 (1995); *Powell v. Gant,* 199 Ill.App.3d 259, 145 Ill.Dec. 339, 556 N.E.2d 1241, 1244–45, *appeal denied,* 135 Ill.2d 566, 151 Ill.Dec. 392, 564 N.E.2d 847 (1990); *cf.* Super. Ct. Civ. R. 23.1.[5] To permit the shareholder to represent the corporation without making a demand or showing futility would eviscerate the "right of the corporate directory to corporate control." *Delaware & Hud-*

---

3. Or, in this case, its policyholders.

4. Section 5/7.80 (b) provides in pertinent part:

A complaint in a proceeding brought in the right of a corporation must allege with particularity the demand made, if any, to obtain action by the directors and either why the complainant could not obtain the action or why he or she did not make the demand.

5. Rule 23.1, which governs derivative actions by shareholders, and which parallels Fed. R. Civ. P. 23.1, provides in pertinent part:

The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

*son Co. v. Albany & Susquehanna R.R. Co.,* 213 U.S. 435, 446–47, 29 S.Ct. 540, 53 L.Ed. 862 (1909).

In the present case, it is undisputed that prior to the institution of his action, Flocco failed to make a demand on the board of directors either of State Farm Mutual or of State Farm Fire regarding the possible institution of proceedings by either company to secure the return of moneys paid to President Clinton or to his attorney in connection with the *Jones* litigation. Flocco alleged in his complaint, however, that such a demand upon State Farm Mutual would have been futile, because, *inter alia,* State Farm Mutual had issued a press release in which it had characterized Flocco's claim as "absurd" and as wholly lacking in merit. State Farm Mutual challenged the sufficiency of this allegation, and the trial judge held that Flocco had not satisfied the applicable requirements of Illinois law.[6]

■ On appeal, Flocco asks us to hold as a matter of law that a demand would have been futile and that the complaint against State Farm Mutual, which the trial judge dismissed without prejudice, should be reinstated. But whatever merit, if any, Flocco's claim of futility may have had at the time Flocco initially asserted it, Flocco has undermined his own position and inadvertently scuttled his own claim by his actions since the entry of the trial judge's order. Specifically, in his brief on appeal, Flocco's attorney advised the court that "Flocco subsequently made a demand to State Farm Mutual and State Farm Fire and that demand was rejected."[7] This

---

6. The judge wrote:

Under Illinois law, before instituting a double-derivative action, a plaintiff must make a formal demand on the board of directors of both the parent and the subsidiary company, or allege sufficiently facts that show such demands would have been futile. *Powell* [, *supra* ], 145 Ill.Dec. 339, 556 N.E.2d at 1245. Here, plaintiff made no such demand on either board. In his complaint, he explained that such a demand on State Farm Mutual would be futile because of the widespread attention that has been paid to the challenged action and the presumed inability of the directors to change course after approving the payments. Personal financial interests of defendants Rust and Trosino, and other board members, were cited as additional reasons why a pre-suit demand would be futile. He did not address in the complaint why it would have been futile to make the required pre-suit demand on State Farm Fire's Board of Directors.

In a double-derivative action, Illinois law requires that "a plaintiff shareholder [here, policyholder] must make demand twice, once of the subsidiary company and once of the holding company .... In the alternative, the doctrine of futility excuses demand on directors when the majority of the directors are the alleged wrongdoers." *Id.* (citation omitted). There is no allegation in the complaint that a majority of the directors of either State Farm Mutual or State Farm Fire are wrongdoers in connection with the decision to make the challenged payments. Furthermore, plaintiff

has not indicated in the complaint any attempt to make a formal pre-suit demand on either State Farm Mutual or State Farm Fire, and has asserted futility only in connection with State Farm Mutual. This is a clearly insufficient effort to comply with the requirements of Illinois law as expressed in *Powell.*

7. In informing the court that demands had been made and refused, Flocco's attorney made representations as to facts outside the record without first filing a motion to supplement the record. *See* D.C.App. R. 10(e); *Maldonado v. Maldonado,* 631 A.2d 40, 41 n. 1 (D.C.1993) (the court ordinarily will not consider facts outside the record). Moreover, counsel did not provide a copy of his demand letters, or even specify the date on which they were sent. Counsel did, however, attach as an "addendum" to his brief a copy of a letter to him dated September 28, 1998 from David M. Spector, Esq., counsel for State Farm Mutual and State Farm Fire. According to Mr. Spector's letter, the two companies had determined through their "Special Litigation Committees," on the basis of a "thorough investigation," that "there is no basis to pursue a claim against any State Farm representative or third party or take any other action arising out of the decision to defend William J. Clinton for a period of time in *Jones v. Clinton.*"

Although outside the record, it is undisputed that Flocco made post-order demands and that these demands were rejected. Indeed, in their supplemental submissions, the parties have extensively discussed the legal conse-

representation is fatal as a matter of law to Flocco's position in the trial court and on appeal.

By making his post-order demands on the boards of directors of State Farm Mutual and State Farm Fire, Flocco substantially altered the legal landscape,[8] conceded the independence of a majority of the board of directors of each corporation, *Levine, supra,* 591 A.2d at 212, and waived his claim of futility. "Under the law of Delaware and the States that follow its lead, a shareholder who makes demand may not later assert that demand was in fact excused as futile." *Miller, supra,* 211 Ill.Dec. 897, 656 N.E.2d at 96–97 (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 103, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)); *see also Spiegel, supra,* 571 A.2d at 775. In *Miller,* the Illinois Court of Appeals went on to state:

We see no reason to deviate from Delaware's standard, as this rule makes a great deal of sense from an efficiency standpoint. It would be a waste of time and resources to allow a shareholder to make a demand and have the claim investigated by the company, only to allow the shareholder to declare the investigation meaningless when unhappy with the results.

656 N.E.2d at 97.

Having grounded his derivative action on an allegation that a demand would have been futile, and having subsequently taken post-order actions by which he waived this claim by operation of law, Flocco has effectively conceded that he cannot prove an indispensable element of his derivative action. *See, e.g., Bazata v. National Ins. Co. of Washington,* 400 A.2d 313, 316 (D.C. 1979) (holding that, for purposes of Super. Ct. Civ. R. 41(b), demand is not jurisdictional, but is an element of the shareholder's claim). This defect is fatal to his

---

quences of the events that transpired since the trial judge issued his order. Because these facts were disclosed to the court by Flocco, and because they significantly affect the merits of the appeal to the legal detriment of the party who brought them to our attention, we are constrained to consider them. *See, e.g., Stotland v. GAF Corp.,* 469 A.2d 421, 422–23 (1983)(discussing effect of a similar post-order demand to a case in which the plaintiffs had alleged that a demand would be futile).

**8.** It appears from the casual mention of the post-order developments in a footnote to Flocco's appellate brief that his attorney believed demand and refusal to be simply a proxy for, or indeed proof of, his allegation of futility. Flocco's counsel seems to have assumed that the legal posture of the parties following demand and refusal would be the same as that which would have existed if Flocco had established his futility claim. But the courts of Illinois, like those of other jurisdictions, have held that "demand refused and demand excused situations require different standards." *Miller, supra,* 211 Ill.Dec. 897, 656 N.E.2d at 94. The Supreme Court of Delaware has elaborated upon the distinction:

The focus of a complaint alleging wrongful refusal of demand is different from the focus of a complaint alleging demand futility. The legal issues are different; therefore, the legal standards applied to the complaints are necessarily different. A shareholder plaintiff, by making demand upon a board before filing suit, "tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel,* 571 A.2d at 777. When a shareholder files a derivative suit asserting a claim of demand futility, hence demand excused, the basis for such a claim is that the board is (1) interested and not independent; and (2) that the transaction attacked is not protected by the business judgment rule. *Aronson [v. Lewis,* 473 A.2d 805], 814 [ (Del.1984) ]. In contrast, Levine's complaint based on wrongful refusal of demand not only tacitly concedes lack of self-interest and independence of a majority of the Board, but expressly concedes both issues. Thus, the first part of the *Aronson* test did not come into play and the trial court was only required to address the application of the business judgment rule to the Board's refusal of Levine's demand.

*Levine, supra,* 591 A.2d at 212. Indeed, "[t]he effect of a demand is to place control of the derivative litigation in the hands of the board of directors." *Spiegel, supra,* 571 A.2d at 775. Illinois law is to the same effect. *See Miller, supra,* 211 Ill.Dec. 897, 656 N.E.2d at 94–95; *Powell, supra,* 145 Ill.Dec. 339, 556 N.E.2d at 1245.

complaint as written and requires dismissal of the action against all defendants.[9]

### D. *Flocco's failure to join State Farm Fire.*

#### (1) *The requirements of Illinois law.*

■ As we have previously noted, Flocco failed to make a demand on State Farm Fire prior to the institution of this action. He likewise made no allegation of futility with respect to State Farm Fire, and he failed to join State Farm Fire as a party defendant. We agree with the trial judge that these failures on Flocco's part also require dismissal of his complaint.

■ The Supreme Court of Illinois has stated that a derivative suit is "a device to protect shareholders against abuse by the corporation, its officers and directors, and is a vehicle to insure corporate accountability." *Brown v. Tenney*, 125 Ill.2d 348, 126 Ill.Dec. 545, 532 N.E.2d 230, 232 (1988). In a traditional derivative action, a shareholder seeks to assert the rights of the corporation in which he or she holds stock. *Id.* at 232–33. Illinois also recognizes a "double derivative action," in which the shareholder of a parent company sues on behalf of the parent and its wholly-owned subsidiary to address the alleged misuse of the subsidiary's assets. *Id.* at 233. The reason for the existence of this form of action is apparent: "A shareholder in a holding company cannot maintain a classic single derivative action against the subsidiary because he or she will not, technically, meet the threshold share-ownership requirement to bring a derivative action against the subsidiary." *Id.* Thus,

> in order for plaintiffs to have standing to bring [a double derivative claim] against defendants, plaintiffs must be (1) shareholders of record in a holding company, (2) suing on behalf of a subsidiary con-

trolled or dominated by the holding company, and (3) bringing the action after demand is made to and rejected by both the subsidiary and holding company.

*Powell, supra,* 145 Ill.Dec. 339, 556 N.E.2d at 1244.

In the present case, the trial judge faithfully applied the requirements of Illinois law to the complaint before him, as follows:

> Assuming that as a State Farm Fire policyholder, [Flocco] would be entitled under Illinois law to bring a single-derivative suit against State Farm Fire, he has chosen not to do so. Instead, plaintiff has sued State Farm Mutual and his action must be analyzed solely as a double-derivative suit, and must meet applicable pleading requirements for such an action.
>
> Under Illinois law, it is clear that in a double-derivative lawsuit both the parent and the subsidiary must be made parties to the action. As pointed out in *Brown v. Tenney, [supra,]* "the injured subsidiary, being the real party in interest, must be made a party to the double derivative action as a defendant," [126 Ill.Dec. 545, 532 N.E.2d] at 234, because the purpose of the double-derivative action is to redress an injury suffered by the subsidiary. Here, plaintiff rather unspecifically alleges that the assets of State Farm Mutual were converted and wasted, and leaves for the reader to infer that it must be the policyholders of State Farm Fire that were so mistreated because it was State Farm Fire that paid the Clinton claim. Thus, the injury is that of· the subsidiary and, under *Brown*, the subsidiary must be a party to the action.

(Footnote omitted.) We agree entirely with the judge's analysis.

---

9. The trial judge relied on Flocco's failure to allege a pretrial demand as a ground for dismissal of the complaint only as to the defendant State Farm Mutual. The judge dismissed the claims against the individual defendants with prejudice on other grounds, and he therefore did not reach the question whether dismissal as to those defendants was required as a result of Flocco's alleged failure to comply with prerequisites for instituting a derivative action.

(2) *"Piercing the corporate veil."*

■ Flocco argues that State Farm Fire was not an indispensable party because "State Farm Mutual's own admissions demonstrate that State Farm Mutual and State Farm Fire are one and the same, at least for purposes of the actions complained about in this case." Flocco is thus asking this court—an appellate tribunal—to pierce the corporate veil and to declare the separate corporate existence of State Farm Fire to be a sham.[10] For several reasons, Flocco's position cannot prevail.

■ First, as the plaintiff in a double derivative action, Flocco purports to be acting in the interest of his insurer, State Farm Fire, and he therefore possesses only those rights that State Farm Fire would have had if State Farm Fire had filed suit on its own behalf. *See, e.g., Daily Income Fund v. Fox,* 464 U.S. 523, 528, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984). But a corporation may not pierce its own veil, because to do so "would have the effect of denying the corporation its own corporate existence." *In re Rehabilitation of Centaur Ins. Co.,* 158 Ill.2d 166, 198 Ill.Dec. 404, 632 N.E.2d 1015, 1018 (1994) (internal quotation marks omitted). As one who claims to be acting on behalf of State Farm Mutual and State Farm Fire, Flocco is barred from arguing that the two companies should be viewed as a single entity.

■ Second, "a party seeking to pierce the corporate veil has the burden to make a substantial showing that the corporation is really a dummy or sham for another dominating entity." *Jacobson v. Buffalo Rock Shooters Supply, Inc.,* 278 Ill.App.3d 1084, 215 Ill.Dec. 931, 664 N.E.2d 328, 331, *appeal denied,* 168 Ill.2d 593, 219 Ill.Dec. 565, 671 N.E.2d 732 (1996). Flocco's complaint does not contain allegations which, if true, would permit the court to find that State Farm Fire is a dummy or a sham. The fact that State Farm Fire is the wholly owned subsidiary of State Farm Mutual does not provide a sufficient basis for such a finding. "Dominant stock ownership alone does not create an identity of interest as an *alter ego." Hills of Palos Condominium Ass'n v. I-Del, Inc.,* 255 Ill. App.3d 448, 193 Ill.Dec. 760, 626 N.E.2d 1311, 1333 (1993), *appeal denied,* 154 Ill.2d 560, 197 Ill.Dec. 486, 631 N.E.2d 708 (1994). On the contrary, "courts look not to a single factor but consider a number of variables such as inadequate capitalization, failure to observe corporate formalities, the commingling of funds, and the absence of corporate records." *Melko v. Dionisio,* 219 Ill.App.3d 1048, 162 Ill.Dec. 623, 580 N.E.2d 586, 595 (1991). Flocco has failed to allege that State Farm Fire was inadequately capitalized, that it failed to elect officers or directors or to hold board meetings, that its funds have been commingled with those of State Farm Mutual, or that its corporate records have not been separately maintained.

Finally, Flocco is effectively requesting an appellate finding on the "corporate veil" issue, but he has made no allegation on the subject in his complaint. No discovery on the subject has been conducted or requested, and no evidentiary record has been developed. In one of his post-argument submissions, Flocco has acknowledged the obvious: "In the instant case, there remains confusion as to the precise status of State Farm Fire and its relationship to State Farm Mutual, the parent." An appellate court cannot disregard a defendant's corporate form on the basis of such a record, and Flocco is not entitled to proceed with the case where his complaint is barren of the requisite allegations.

---

**10.** Flocco's attorney frames the argument in this way: "A corporate entity, a fictitious creature of the law in the first place, cannot escape liability for its own wrongdoing by creating a complicated web of other corporate entities." As counsel for State Farm Mutual correctly points out, Flocco, who is purportedly suing *on behalf of* State Farm Mutual, appears to be making arguments directly contrary to the interests of the corporation for whose benefit he claims to be acting.

# 156

### (3) *Leave to amend.*

In a footnote to his opposition in the trial court to State Farm's motion to dismiss, Flocco stated that he would be "willing to" add State Farm Fire as a defendant if the court concluded that it was necessary for him to do so. Flocco now contends that the trial judge abused his discretion by "denying" him leave to amend his complaint.

■ This contention is unpersuasive. The trial judge dismissed the complaint as to State Farm Mutual *without prejudice.* Flocco was thus free to file a new complaint joining State Farm Fire, and he could thus attempt to cure any other deficiencies in his original complaint. Instead, Flocco chose to stand on his pleading and to take an immediate appeal. Under these circumstances, he is in no position to complain, and there was no error. *See, e.g., Kowal v. MCI Communications Corp.*, 305 U.S.App.D.C. 60, 69, 16 F.3d 1271, 1280 (1994); *Watwood v. Credit Bureau, Inc.*, 68 A.2d 905, 906 (D.C.1949); *cf. Boland v. Engle*, 113 F.3d 706, 715 (7th Cir.1997); see also note 18, *infra,* and associated text.[11]

## III.

## THE DISMISSALS WITH PREJUDICE

Having failed to satisfy the prerequisites for maintaining a derivative action, Flocco was not entitled to sue on behalf of State Farm Mutual, and his complaint therefore could not stand against any defendant. The trial judge held that dismissal on these grounds must be without prejudice. No party has challenged this determination,[12] and we agree that it was correct.

Our affirmance of the dismissal of the complaint without prejudice on the foregoing grounds does not, however, complete our task. The trial judge dismissed the

---

**11.** Although there is authority to the contrary, *see* 13 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5997, at 240 (1995), we conclude that Flocco's failure to join State Farm Fire as a defendant did not deprive the court of subject matter jurisdiction over his substantive claims in the case. A leading commentator has written:

> There has long been an impression that dismissal for failure to join an indispensable party [under FED. R. CIV. P. 19] is a jurisdictional dismissal. This notion probably gained currency because some courts have permitted the defense to be raised for the first time on appeal [internal cross-reference omitted]. However arguable this issue might have been under earlier practice, it is absolutely clear today that a dismissal on these grounds is *not* jurisdictional. In other words, if a court continues to judgment in the absence of someone who would have been found indispensable, the judgment is not subject to collateral attack

4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.02[4][C](3d ed.2000) (footnotes omitted; emphasis in original); *accord*, 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1611, pp. 171–73 (2d ed.1986) (footnotes omitted) ("since the indispensable party doctrine is equitable both in its origin and [its] nature, scholarly commentary as well as the vast majority of courts reject this 'jurisdiction-al' characterization"). The trial judge therefore acted within his jurisdiction in addressing, on the merits, the legal effect of Flocco's failure to make a demand, and he likewise did not exceed his authority by reaching other non-jurisdictional issues.

**12.** Counsel for defendants Clinton and Bennett argue that Flocco deliberately mooted his action by making his post-complaint demands, and that he therefore waived any challenge to the judge's dismissal with prejudice of the action against these defendants. *See, e.g., U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 24, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *National Football League Players Ass'n v. Pro–Football, Inc.*, 316 U.S.App.D.C. 415, 416–17, 79 F.3d 1215, 1216–17 (1996). Because we affirm the dismissal with prejudice on other grounds, we need not decide this issue. We note, however, that the actions taken by Flocco's counsel which require the dismissal of the action, *i.e.*, the demands on the corporate boards of directors, which undermined Flocco's allegation of futility, may not have been taken with the intent to moot the appeal. Under these circumstances, the remedy proposed by Clinton and Bennett—namely, the preclusion of Flocco from challenging the correctness of the trial judge's substantive rulings—appears unduly harsh for what may have been no more than barristerial oversight.

action against President Clinton and Mr. Bennett *with* prejudice on the grounds that, as to these defendants, the complaint failed to state a claim upon which relief may be granted. The judge also dismissed the complaint with prejudice against defendants Rust and Trosino because, in his view, these defendants were not amenable to suit in the District of Columbia in connection with the transactions alleged in the complaint. Flocco contends that these rulings were erroneous, and we must therefore decide whether the claims against Clinton, Bennett, Rust, and Trosino were properly dismissed with (rather than without) prejudice.

A. *The claims against Clinton and Bennett.*

 In Count 1 of his complaint, Flocco alleged, on information and belief, that defendants Clinton and Bennett, "acting in concert" with Rust and Trosino, used President Clinton's policy with State Farm Fire "as a pretext" for the "unlawful conversion of approximately ... $1,100,000 of State Farm Funds to the use and benefit of William J. Clinton, and have deprived State Farm of that sum." According to Flocco, each of the defendants "unlawfully exercised ownership, dominion or control over State Farm funds." Flocco alleged that Rust and Trosino "have done so by authorizing payments of State Farm funds for the benefit of Mr. Clinton even though State Farm had no legal duty to make such payments," [13] and that Clinton and Bennett "have done so by receiving and retaining these funds, or the benefit thereof." Finally, Flocco asserted, on information and belief, that Clinton and Bennett, as well as Rust and Trosino, were all aware that "there [was] no ground whatever for any claim that State Farm had any duty to defend Mr. Clinton against Ms. Jones' suit."

The trial judge dismissed Count I, holding that Flocco had failed in that count to state a claim upon which relief could be granted. Citing *Washington v. John T. Rhines Co.*, 646 A.2d 345, 346 n. 1 (D.C. 1994), the judge recognized that "[i]n deciding a motion to dismiss pursuant to [Super. Ct. Civ. R.] 12(b)(6), the complaint is read in the light most favorable to the claimant and the factual allegations are accepted as true." Nevertheless, the judge concluded that "on these facts, no relief can be granted for a derivative claim in conversion." The judge reasoned as follows:

[T]he conversion count must be analyzed as one made by State Farm Fire for accepting and paying a claim made on behalf of a policyholder who held a valid policy at the time the claim was made.

So analyzed, Count I cannot stand. At the time the claim was made, Clinton owned a valid liability insurance policy issued by State Farm Fire. Through his attorney, he made a claim on that policy in connection with a lawsuit filed against him. The insurer determined to pay the claim, that is, to support the defense of the lawsuit filed against the policyholder. Pursuant to that determination, it transferred certain funds either to Clinton or his attorney. By filing a derivative action on behalf of either State Farm Mutual or State Farm Fire against President Clinton and his attorney, plaintiff is forced into the position of asserting that State Farm Fire could claim that Clinton and Bennett converted State Farm Fire funds which State Farm Fire determined should be paid to those defendants. To state the proposition is to refute it. It cannot logically be that defendants Clinton and Bennett exercised unlawful dominion and control over State Farm Fire funds when State

---

**13.** In his complaint, Flocco also speculated regarding the motives of Rust and Trosino. He alleged, on information and belief, that these defendants "converted State Farm Funds for the purpose of winning the grati-tude and favor of the President of the United States and creating a favorable regulatory environment for the insurance industry and an unfavorable environment for competitor industries."

Farm Fire paid those funds to them pursuant to a claim made on a valid State Farm Fire insurance policy. Without unlawful ownership, dominion, or control, there can be no conversion, and Count I must be dismissed.

"Conversion has generally been defined as any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Chase Manhattan Bank v. Burden,* 489 A.2d 494, 495 (D.C. 1985) (quoting *Shea v. Fridley,* 123 A.2d 358, 361 (D.C.1956)). In the present case, Flocco claims to have sufficiently alleged conversion by asserting first, that Clinton, Bennett, Rust and Trosino all knew that the money in question belonged to State Farm Fire and that Clinton and Bennett had no right to it, and second, that in spite of their knowledge, the defendants took the funds away from their rightful owner and transferred them to a wrongdoer—President Clinton—who allegedly had made a knowingly false claim of coverage. But even if conversion could be established by proof that Clinton and Bennett knew that the President was not entitled to the funds—an issue we need not and do not decide—Flocco's complaint nevertheless fails. The flaw in Flocco's argument is that he treats as *a fact,* known to Clinton and Bennett, the proposition that the policy did not apply, when in reality that proposition turns on an unresolved and somewhat dubious legal theory. The complaint thus alleges that Clinton and Bennett knew a fact that, in our view, they could not have known because it is subject to genuine dispute and therefore not knowable.

President Clinton's insurance policy, while excluding claims for discrimination and intentional conduct,[14] obligated State Farm Fire to pay for a "net loss" for personal injury, including libel, slander and defamation of character. Paula Jones' suit against the President included claims of defamation. Under familiar principles of insurance law, "any reasonable doubt which may arise as to the meaning or intent of a condition of [the policy] will be resolved against the insurer." *Cameron v. USAA Property & Cas. Ins. Co.,* 733 A.2d 965, 968 (D.C.1999) (citations omitted); *accord, West American Ins. Co. v. Vago,* 197 Ill.App.3d 131, 143 Ill.Dec. 195, 553 N.E.2d 1181, 1184, *appeal denied,* 133 Ill.2d 574, 149 Ill.Dec. 340, 561 N.E.2d 710 (1990) ("The insurer must defend its insured if the complaint alleges facts which are within or potentially within policy coverage .... The duty to defend exists even if the complaint alleges several causes of action and only one is within potential policy coverage.") (citations omitted).

In *Stanback v. Westchester Fire Ins. Co.,* 68 N.C.App. 107, 314 S.E.2d 775 (1984), the insured's umbrella policy provided coverage for suits against the insured for personal injury, including, *inter alia,* malicious prosecution and intentional infliction of emotional distress. The policy contained an exclusion for "any act committed by ... the insured with intent to cause personal injury or property damage." *Id.* at 778. The insured had been sued by his wife for inflicting mental anguish and for maliciously instituting a lawsuit against her without probable cause. The insurer denied coverage to the plaintiff, citing the exclusion for actions for injury resulting from intentional acts. The court ruled in favor of the insured:

> In this case the policy defined "personal injury" to include false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, libel and slander. These are clearly intentional torts. This definition when read in conjunction with exclusion (e), which purportedly attempts to exclude intentional torts, creates an ambiguity in the policy. Our supreme court has held that when language is used in an insurance policy which is reasonably

---

14. The policy provided, *inter alia,* that "[w]e will not provide insurance ... for personal injury ... which is expected or intended by you ...."

susceptible of differing constructions, it must be given the construction most favorable to the insured, since the insurance company prepared the policy and chose the language. *See Grant v. [Emmco] Insurance Co.*, 295 N.C. 39, 243 S.E.2d 894 (1978). In this case the apparent conflict between coverage and exclusion must therefore be resolved in favor of plaintiff, and we therefore reject defendants's argument that Mrs. Stanback's allegations regarding intentional infliction of mental anguish and malicious prosecution are excluded from coverage by exclusion (e).

*Id.* at 779; *see also Scudder v. Hanover Ins. Co.*, 201 Ill.App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559, 562 (1990) ("[U]nder Illinois law, policy provisions excluding coverage for acts committed by the insured with intent to cause personal injury will only exclude coverage if the insured acted with specific intent to injure, unless the policy states otherwise."); *Burns v. Middlesex Ins. Co.*, 558 A.2d 701, 702 (Me. 1989) (exclusion from coverage of "bodily injury ... which is expected or intended by the insured" did not negate insurer's duty to defend suit against insured for defamation, invasion of privacy, and intentional infliction of emotional distress; exclusion applies only where insured subjectively wanted to cause bodily injury and subjectively foresaw it as practically certain; "[i]f there is *any* legal or factual basis that could be developed at trial, which would obligate the insurer to pay under the policy, the insured is entitled to a defense") (emphasis in original) (citation omitted); but *cf. Commercial Union Ins. Companies v. Sky, Inc.*, 810 F.Supp. 249, 254–55 (W.D.Ark.1992) (no duty to defend defamation claims made in insured's brief, where those claims arose out of the underlying non-covered claim of sexual harassment).[15]

The question whether, as Flocco alleges, President Clinton and Mr. Bennett *knew* that the policy did not apply to Ms. Jones' action must be analyzed with the foregoing principles in mind. In our view, Flocco's critical allegation cannot be reconciled with the authorities we have cited. Indeed, Flocco's own submission to the trial court demonstrates that Clinton and Bennett could not have known what Flocco alleges that they knew. As a part of that submission, Flocco's attorney included a copy of *Symposium: Is the President getting special insurance treatment for the Paula Jones lawsuit?*, Insight, July 21, 1997, at 24–27. This symposium contains what is in effect a debate between two insurance experts who reached opposite conclusions on the issue. Richard Giller, a Los Angeles insurance lawyer, argued as follows:

> Neither Pacific Indemnity nor State Farm legally are [sic] obliged to provide the president with a defense in the Jones case, based upon the nature of the allegations of Jones' complaint, the terms and conditions of the two policies, applicable case law and the strong public policy against allowing people accused of sexual wrongdoing to pass off their liability to insurance companies.

> So why would Pacific Indemnity or State Farm agree to share in the million-dollar cost of defense—a figure that could double or triple quickly? At least to this expert, the answer is simple and straightforward: because their policyholder is the President of the United States. If you or I were accused of the same wrongdoing of which Jones has accused the President, neither company would have lifted a finger to assist us.

In Mr. Giller's view, Ms. Jones' defamation claim, like the other counts in her complaint, was based on "intentional misconduct" on the part of President Clinton, and

---

**15.** Although the factual presentation in *Commercial Union* is somewhat cryptic, it appears that in that case the alleged defamation took place at the same time as, or shortly after, the claimed sexual harassment. In *Jones v. Clinton*, on the other hand, the defamation of Ms. Jones' character is alleged to have occurred several years after the incident at the Excelsior Hotel.

it therefore fell outside the scope of the President's policy with State Farm Fire.[16] *Id.* at 24.

But Sean Mooney, a senior vice president and economist at the Insurance Information Institute, was of a different opinion:

> The first issue—whether policies held by the president would provide coverage—is relatively easy to answer. They do. The president purchased umbrella liability policies from two different insurance companies. These policies provide coverage for any personal injury for which a covered person legally is responsible. The policy defines personal injury to include mental anguish and injury, false arrest, false imprisonment, humiliation, libel, slander and defamation of character. As long as acts such as these were alleged in the Jones lawsuit the insurance company normally will provide coverage.
>
> Specifically, the lawsuit alleged false imprisonment and defamation of character, and the insurance companies provided coverage against these claims. They were not responding to the sexual-harassment charge. Indeed, one of the policies excludes acts of sexual harassment.

\* \* \* \*

> There is one exclusion in the umbrella insurance policy that is particularly relevant to the Jones lawsuit: the exclusion for intentional acts. The policy excludes an act committed or directed by a covered person with intent to cause personal injury. If the lawsuit alleges that the act was intended to cause injury, then this exclusion would apply. But if the lawsuit is silent on intent or equivocal, then insurance companies, in most cases, will believe they have an obligation to defend.

*Id.* at 25.

We find it unnecessary to determine whether Mr. Giller or Mr. Mooney has the better of the argument. The very existence of an evidently *bona fide* dispute regarding coverage between two specialists in the field refutes Flocco's purportedly factual assertion that Clinton and Bennett knew that Ms. Jones' claim was not covered.

In assessing Flocco's allegations, it is our obligation to "pierce through the pleadings and their adroit craftsmanship to get at the substance of the claim." *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir.1993). "While, for the purpose of a motion to dismiss, facts well pleaded must be taken as true, unsupported conclusions of the pleader may be disregarded." *Oppenheim v. Sterling*, 368 F.2d 516, 519 (10th Cir.1966), *cert. denied*, 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967). "We should not accept as true allegations that are in conflict with facts judicially known to the court." *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123 (6th Cir. 1971). Because we know judicially that the dispute over coverage presents an unsettled question of law, we need not, and indeed cannot, credit Flocco's allegation in Count I that Clinton and Bennett knew that they were not entitled to the money paid to them by State Farm Fire.

Stripped of this critical allegation, the claims against the President and his attorney fail to state a claim upon which relief may be granted. If, as we have concluded, the question of coverage was in doubt, then defendants Clinton and Bennett had the right to file a claim under the policy. We agree with the trial judge that the subsequent acceptance by these defendants of money which State Farm Fire voluntarily turned over to them in response to that claim could not constitute conversion, regardless of Flocco's criticism of the amount paid.

Flocco asserts that even if Count I failed to state a claim for conversion, he should

---

**16.** At the conclusion of his article, Mr. Giller briefly described Flocco's suit in the Superior Court and stated: "Based on my experience in insurance law, I'd say he may have a case." *Symposium, supra,* at 27.

have been permitted to amend his complaint to allege some other tort.[17] But even if we were to assume that Flocco has preserved this point for appeal—a dubious assumption [18]—he has failed to identify in any of his numerous filings a claim in tort which he could have filed in the name of State Farm Fire and which could have survived the excision from his complaint of the allegation that Clinton and Bennett knew that they were not entitled to coverage. We likewise know of no such tort. Accordingly, we conclude that the trial judge did not err by dismissing Count I with prejudice.

### B. *The claims against Rust and Trosino.*

 Finally, the trial judge dismissed with prejudice Count II of the complaint, which contained Flocco's claims against Rust and Trosino, for lack of personal jurisdiction over these defendants. Flocco contends that this dismissal was erroneous. He claims that Rust and Trosino were properly subject to the court's jurisdiction pursuant to the District's long arm statute. *See* D.C.Code § 13–423(a)(1) (1995). We do not agree.

At the times relevant to this appeal, Rust was the Chief Executive Officer (CEO) of State Farm Mutual. He was also President and CEO of State Farm Fire and a director of that corporation. Trosino was a Vice Chairman of State Farm Mutual and a Vice President and Director of State Farm Fire. Both men were residents of Illinois.

Flocco alleged in his complaint that Rust and Trosino sent agents to the District of Columbia to meet with defendant Bennett regarding President Clinton's claim under his State Farm Fire policy. Flocco further asserted that these defendants ordered the payment to Clinton and Bennett, in the District of Columbia, of funds belonging to State Farm Fire.[19] According to Flocco, the foregoing allegations were sufficient to confer personal jurisdiction on the Superior Court, not only over State Farm Mutual, but over Rust and Trosino as well.

The trial judge held that these averments were insufficient. After noting the absence from the complaint of any allegation that Rust or Trosino had personally come to the District in connection with the transactions here at issue, the judge wrote:

> This court may exercise "personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... (1) transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1) (1995 Repl.). When long-arm jurisdiction is based on transacting business in the District, only acts within the District related to the transaction of business can form the basis for personal jurisdiction. D.C.Code § 13–423(b); *Trerotola v. Cotter*, 601 A.2d 60, 63 (D.C.1991). Thus, any contacts of Rust and Trosino with the District of Columbia unrelated

---

**17.** In a footnote to his order that followed his dismissal of the conversion claim, the trial judge wrote:

> This is not to say that, given a factual basis and appropriate pleading, other torts, if alleged, could not survive a Rule 12(b)(6) challenge.

**18.** Flocco never attempted to amend his complaint in the trial court, either as a matter of right prior to the judge's dismissal order, nor by motion thereafter. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the

contemplation of Rule 15(a)." *Confederate Memorial Ass'n v. Hines*, 301 U.S.App.D.C. 395, 399, 995 F.2d 295, 299 (1993). Accordingly, in light of *Hines* "it could hardly have been an abuse of discretion for the [Superior] Court not to have afforded [Flocco] such leave *sua sponte.*" *Id.*

**19.** Rust and Trosino filed affidavits in which each denied any role whatever in the decision to authorize payments to Clinton and Bennett. Each defendant also denied that he had ever had any substantive communications with either Clinton or Bennett on any subject, or any dealings with anyone regarding the events described in the complaint.

to the transactions complained of by plaintiff are irrelevant.

It seems clear that even if defendants Rust and Trosino had the kind of personal involvement in the decision to re-imburse part of President Clinton's cost of defense of the Jones action alleged in the complaint, which they have denied, that involvement would support the exercise of personal jurisdiction over the company for its transaction of business in the District pursuant to the long-arm statute, but would not confer personal jurisdiction on these individual defendants sued in their individual capacities. When there are no allegations that a nonresident defendant's contacts with a jurisdiction were for the purpose of transacting business as an individual, but rather were only to perpetuate a corporation's business, that defendant cannot be sued individually under the "transacting business" prong of the long-arm statute. *Quinto v. Legal Times of Washington, Inc.,* 506 F.Supp. 554, 558 (D.D.C.1981); *see also Wiggins v. Equifax Inc.,* 853 F.Supp. 500, 503 (D.D.C.1994).

We have held, and Rust and Trosino concede, that the "transacting any business" provision of our long-arm statute extends as far as the Fifth Amendment's Due Process Clause permits. *See, e.g., Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 325 (D.C.2000) (en banc). "[P]ersonal jurisdiction [therefore] exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Wiggins, supra,* 853 F.Supp. at 502 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). "The critical [question] is whether the nonresident's 'conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there.'" *Trerotola v. Cotter,* 601 A.2d 60, 64 (D.C.

1991) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *see also Shoppers Food Warehouse, supra,* 746 A.2d at 331. In the present case, we conclude that this question must be answered in the negative.

We do not doubt that if the well-pleaded allegations of the complaint are taken as true, then the trial court had personal jurisdiction over State Farm Mutual. But

> jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him .... Each defendant's contacts with the forum State must be assessed individually .... The requirements of *International Shoe* [*Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] must be met as to each defendant over whom a state court exercises jurisdiction.

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (citations and internal brackets omitted).

The present case is similar in dispositive respects to *Wiggins, supra.* In *Wiggins,* the plaintiff asked the court to exercise personal jurisdiction over Lowitz and Shaw, each of whom was a supervisor in the corporate defendant's office in McLean, Virginia. According to the plaintiff, the two nonresident supervisors directed and supervised subordinate employees who had engaged in the District of Columbia in activities prohibited by the federal Fair Credit Reporting Act and by RICO. The court held that the allegations of the complaint were insufficient under the Due Process Clause to confer jurisdiction over the supervisors. 853 F.Supp. at 502. The court continued:

> [A] court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation. *See Quinto v. Legal Times,* 506 F.Supp. 554,

558 (D.D.C.1981). Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity. Thus, the corporation *ordinarily*[20] insulates the individual employee from the court's personal jurisdiction.

> In this case, defendants are clearly not "doing business" within the District of Columbia. They are merely employees of a company that has contacts with the District. These acts, carried out within the scope of their employment, do not create sufficient contacts to establish personal jurisdiction. The fact that Lowitz and Shaw may have acted in a supervisory capacity over persons with contacts with the District also fails to create personal jurisdiction.

*Id.* at 503 (emphasis in original; footnote omitted).

Flocco asserts that Rust and Trosino directed their subordinates to carry out activities contrary to the interests of State Farm Mutual, that these directives were personal rather than corporate in nature, and that the trial judge therefore should have exercised personal jurisdiction over these defendants. This contention is unpersuasive. In *Richard v. Bell Atlantic Corp.*, 976 F.Supp. 40 (D.D.C.1997), the plaintiff in an action for employment discrimination alleged that three individual defendants, who were high-ranking officers of Bell Atlantic Corporation, but who did not reside in the District of Columbia, had intentionally directed subordinates to engage in a variety of activities which resulted in racial discrimination in the District against Bell Atlantic's black employees. The court held that, for jurisdictional purposes, notwithstanding the unlawful nature of their alleged conduct, the individual defendants' activities were performed in their capacity as corporate officers, and that in light of *Keeton* and other authorities, the court lacked personal jurisdiction over the nonresident defendants:

> All of these alleged jurisdictional facts involve the individual defendants' official duties for Bell Atlantic Corporation—setting policies, communicating with employees, conducting investigations, and making employment decisions. As a matter of law, the defendants were at all times acting within the scope of their employment, because they were authorized to perform such acts for BAC. Accordingly, the plaintiffs have failed to plead sufficient jurisdictional facts, because acts committed within the scope of employment cannot be imputed to the individual defendants to establish personal jurisdiction over them. *See Keeton,* [*supra,* 465 U.S. at] 781 n. 13[, 104 S.Ct. 1473]; *Wiggins,* [*supra,*] 853 F.Supp. at 503 (finding no personal jurisdiction over two supervisors at a credit reporting company, because they acted within the scope of their employment when they purportedly (a) issued and transmitted the plaintiff's credit reports to another office and (b) supervised employees who collected information on the plaintiff).

*Id.* at 50 (footnotes omitted).

■ We agree with the analysis of the courts in *Wiggins* and *Richard.*[21] Even if

---

**20.** Given the judge's italicization of the word "ordinarily" and his earlier invocation of a "due process" analysis, we do not read the *Wiggins* opinion as articulating a *per se* rule that an employee's acts in his official capacity may *never* give rise to personal jurisdiction over him. Indeed, we explicitly decline to adopt such an absolute "fiduciary shield" doctrine, which would be difficult to reconcile with Supreme Court precedent and with persuasive case authority from other courts. *See Keeton, supra,* 465 U.S. at 781 n. 13, 104 S.Ct.

1473; *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (defendants' "status as employees does not somehow insulate them from jurisdiction"); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 903 (2d Cir.1981); *cf. Chase v. Pan-Pacific Broadcasting, Inc.,* 617 F.Supp. 1414, 1422–23 (D.D.C.1985) (corporate officer subject to personal jurisdiction where, *inter alia,* he twice came to District of Columbia for discussions and allegedly made dispositive decisions there).

we assume, contrary to their affidavits, that Rust and Trosino dispatched one or more subordinates to the District to negotiate with Mr. Bennett and that these defendants subsequently authorized the wrongful payment to President Clinton and his attorney of money belonging to State Farm Fire, we do not believe that Rust and Trosino could reasonably have anticipated being haled into court in the District, as individual defendants, to answer a suit such as Flocco's. Indeed, if Flocco's argument were accepted; it would be difficult to envision a reasonable limiting principle which would preclude the exercise of jurisdiction over each and every officer of State Farm Mutual and State Farm Fire, even if that individual has never set foot in the District of Columbia. Indeed, Flocco's doctrine would permit the exercise of jurisdiction even over nonresident officers of multi-national corporations located in jurisdictions many thousands of miles from the United States, whenever a plaintiff has made conclusory allegations, on information and belief, that such persons have directed or supervised activities of subordinates who have taken some action in the District. Our concern in this regard is compounded by Flocco's remarkable acknowledgment that he may have sued the wrong individuals,[22] and by his insistence that personal jurisdiction over Rust and Trosino exists anyway. Accordingly, we conclude that the claims against Rust and Trosino were properly dismissed.[23]

In his written order, the trial judge stated that the action against Rust and Trosino was dismissed "with prejudice." Presumably, the judge meant by this terminology that the order of dismissal was with prejudice to the filing of a new complaint against these defendants in the District of Columbia. In any event,

21. *See also Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F.Supp. 46, 49–50 (D.D.C.1994) (nonresident defendants' correspondence and negotiations with plaintiff's District of Columbia attorneys did not give rise to personal jurisdiction over them where "none of the principals were involved in negotiations here or were present in the District at any time"; plaintiff's choice of Washington, D.C. counsel "was a mere fortuity, over which defendants had no control" and "d[id] not rise to the level of transacting business within the District that is necessary to invoke the jurisdiction of our courts.").

22. "In the event that discovery would have led to State Farm officers other than Rust and Trosino, those persons could easily have been *substituted* as defendants." Appellant's Opening Brief at 10–11 (emphasis added).

23. Flocco's remaining arguments with respect to Count II need not detain us long. Although, according to their affidavits, Rust and Trosino occasionally visit the District of Columbia for purposes unrelated to this litigation (Rust to attend meetings of the American Enterprise Institute, the Business Roundtable, the National Alliance of Business, and the Corporate Campaign for the Red Cross; Trosino for *meetings of the Brookings Institute*, the National Italian–American Foundation, and for conferences with legislative branch officials), these contacts are insufficient to establish that either defendant is domiciled in the District or maintains his principal place of business there. *See* D.C.Code § 13–422 (1995). Accordingly, Flocco's claim that the Superior Court had "general jurisdiction" over Rust and Trosino is without merit. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Flocco also asserts that the trial judge should have permitted him to conduct discovery with respect to the sufficiency of Rust's and Trosino's contacts with the District. The determination whether to permit jurisdictional discovery is confided to the sound discretion of the trial court. *See, e.g., Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC*, 331 U.S.App.D.C. 226, 235–36, 148 F.3d 1080, 1089–90 (1998). In order to be entitled to jurisdictional discovery, a plaintiff "must have at least a good faith belief that such discovery will enable [him] to show that the court has personal jurisdiction over the defendant[s]." *Caribbean, supra,* 331 U.S.App.D.C. at 236, 148 F.3d at 1090. Especially in light of Flocco's admission that discovery might have led him to substitute other individuals for Rust and Trosino, we do not believe that Flocco made the necessary showing. Moreover, Flocco's complaint was subject to dismissal for failure to satisfy the prerequisites of a derivative action, and the lawsuit (and discovery) therefore could not continue in any event.

dismissal for want of subject matter or personal jurisdiction is not a decision on the merits. Consequently, upon such a dismissal the plaintiff is free to institute the suit anew in a jurisdiction or under circumstances supporting jurisdiction.

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n. 4 (2d Cir.1994) (citation omitted); *see also Velasquez v. Franz*, 123 N.J. 498, 589 A.2d 143, 147 (1991).

## IV.

## CONCLUSION

For the foregoing reasons, the dismissal of Count II of the complaint with prejudice is modified to reflect that Flocco is not precluded from proceeding against Rust and Trosino in an appropriate forum, provided that he can comply with all of the legal prerequisites for maintaining such a derivative suit. In all other respects, the decision of the trial court is affirmed.

*So ordered.*