*In the Matter of the Petition of Maryland Bio Energy LLC,* et al., No. 251, Sept. Term, 2023. Opinion filed on September 3, 2024, by Albright, J.

MARYLAND STATE PROCUREMENT CONTRACTS – PARTIES TO A CONTRACT – RESPONSIBLE OFFEROR VERSUS SIGNATORY TO CONTRACT

Pursuant to Maryland Code, State Finance and Procurement § 13-104(f), when the State of Maryland awards a procurement contract, the party who signs the contract should be the same party who responded to the State's Request for Proposals and who was awarded the contract. Using a subsidiary to perform the contract is permissible, but the contract can only be awarded to the offeror who was responsible for the proposal selected by the State.

MARYLAND STATE PROCUREMENT CONTRACTS – PARTIES TO A CONTRACT – INTENT TO BE BOUND

When a party has not signed a contract, has removed its signature block from a contract, and has said they are not a party to the contract, that party has not manifested an intent to be bound by the contract. Thus, they are not a party to the contract.

STANDARD OF REVIEW – APPELLATE REVIEW OF AGENCY DECISION

Appellate courts only affirm an agency's decision on the basis of the grounds on which agency decided the case. Appellate courts will not uphold an agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

MARYLAND STATE PROCUREMENT CONTRACTS – VOID CONTRACT – STATUTORY DAMAGES – MARYLAND CODE, STATE FINANCE AND PROCUREMENT § 11-204(b)(2)

When a State procurement contract is found void because of a violation of Division II of Maryland Code, State Finance and Procurement, a party may obtain statutory damages from the State pursuant to Maryland Code, State Finance and Procurement § 11-204(b)(2), but that party must prove they acted in good faith, did not directly contribute to the violation, and had no knowledge of the violation before the procurement contract was awarded.

MARYLAND STATE PROCUREMENT CONTRACTS – VOID CONTRACT – STATUTORY DAMAGES – DIRECTLY CONTRIBUTE – MARYLAND CODE, STATE FINANCE AND PROCUREMENT § 11-204(b)(2)

Under Maryland Code, State Finance and Procurement § 11-204(b)(2), "directly contribute" means to be an important step in or help to cause the violation in a direct way or manner.

<u>MARYLAND STATE PROCUREMENT CONTRACTS – VOID CONTRACT – STATUTORY DAMAGES – DIRECTLY CONTRIBUTE – MARYLAND CODE, STATE FINANCE AND PROCUREMENT § 11-204(b)(2)</u>

Where a party has negotiated a procurement contract with the State and the party has asked for a change in the contract that ultimately voided the contract, that party has directly contributed to the violation that voided the contract under Maryland Code, State Finance and Procurement § 11-204(b)(2).

Circuit Court for Baltimore City
Case No.  24-C-22-004419

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 251

September Term, 2023

_____

IN THE MATTER OF THE PETITION OF
MARYLAND BIO ENERGY LLC, *ET AL.*

_____

Reed,
Albright,
Raker, Irma S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Albright, J.

_____

Filed: September 3, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal, concerning a government procurement contract, comes to us from the Circuit Court for Baltimore City after a series of disputes at the administrative and circuit court levels. Maryland's award of procurement contracts is governed by the Maryland Code, State Finance & Procurement ("SF&P"), and Title 21 of the Code of Maryland Regulations ("COMAR"). These laws ensure fair and equitable treatment of contractors and provide safeguards for maintaining quality and integrity in the procurement process. *See* SF&P § 11-201(a) (enumerating various purposes and policies of the SF&P). To that end, when it awards a procurement contract, the Maryland Department of General Services ("DGS," Appellant) requires that the contract be awarded to someone that bid on it (the "responsible offeror"), among other requirements. SF&P § 13-104(f); *see also* COMAR 21.05.03.03.

In this appeal, DGS voided a procurement contract because the contractor and the bidder were not the same entity. The contractor, Maryland Bio Energy, LLC ("MBE"), and the bidder, Green Planet Power Solutions, Inc. ("GPPS, Inc."), both Appellees here, appealed DGS's decision to the Maryland State Board of Contract Appeals ("MSBCA") and added a claim for breach of contract. The MSBCA agreed with DGS and held that the procurement contract was void. GPPS, Inc. and MBE then petitioned for judicial review of the MSBCA's decision in the circuit court, contending that GPPS, Inc. and MBE were one and the same entity. The circuit court agreed with GPPS, Inc. and MBE, reversed the MSBCA's decision, and remanded to the MSBCA for further proceedings. This is the State's appeal from the circuit court's decision. We reverse the circuit court,

affirm the decisions of the MSBCA, and remand to the circuit court with instructions to affirm the MSBCA's decisions.

The contract here is a Power Purchase Agreement ("PPA") that DGS awarded to GPPS, Inc. in 2013 for the procurement of clean, renewable energy produced from animal waste. Shortly after being awarded the contract, GPPS, Inc. formed Maryland Bio Energy, LLC ("MBE") as a special purpose entity[1] to carry out the PPA. The parties negotiated the PPA over several months. During negotiations, GPPS, Inc. asked DGS to substitute MBE for it in the PPA; DGS did so. Thereafter, the parties to the PPA were defined as MBE and DGS. Just before the PPA was signed, GPPS, Inc. underwent a corporate reorganization, and ownership of MBE was transferred to Green Planet Power Solutions, LLC ("GPPS, LLC")—a subsidiary of GPPS, Inc. The PPA was then finalized between MBE and DGS. Two years later, after discovering the details of the corporate reorganization, DGS terminated the PPA for convenience.

Today, we decide three questions, consolidated and rephrased from DGS's brief:[2]

---

[1] A special purpose entity, or special purpose vehicle, is "a subsidiary created by a parent company to isolate financial risk." Adam Hayes, *What Is a Special Purpose Vehicle (SPV), and Why Do Companies Form Them?*, Investopedia (June 25, 2024), https://www.investopedia.com/terms/s/spv.asp. MBE's expert explained in his report before the MSBCA for the merits hearing that the use of special purpose entities is "common practice in the energy industry." He explained that some of the benefits of special purpose entities are that they offer a degree of bankruptcy remoteness, ease of management among the entities, legal separation from the affairs of the parent entity, and ease of sale or termination.

[2] DGS's questions as presented in its brief were as follows:

1. In its August 2019 Decision, did the MSBCA err in concluding that GPPS, Inc. was not a party to the PPA and the PPA was thus void?

2. In its September 2022 Decision, did the MSBCA correctly interpret the meaning of "directly contribute" in SF&P § 11-204(b)(2)?

3. In the MSBCA's September 2022 Decision, was there substantial evidence to support the MSBCA's finding that MBE failed to prove that it did not directly contribute to the violation of the SF&P § 13-104(f)?

---

**MSBCA's March 2019 Decision**

Did the MSBCA err in exercising jurisdiction over the expectancy damages claim when that claim was not first submitted to DGS for a final agency decision in accordance with the statutorily mandated process for resolving State procurement contract disputes?

**MSBCA's August 2019 Decision**

1. Did the MSBCA correctly hold that the Contract was void because it was awarded to MdBio, rather than the successful offeror, GPPS, Inc., in violation of the General Procurement Law?

2. Did the MSBCA correctly hold that GPPS, Inc. was not a proper party to the administrative appeal because it was not a party to the Contract?

**MSBCA's September 2022 Decision**

Was there substantial evidence in the record to support the MSBCA's finding that MdBio failed to satisfy its burden of proving that it did not directly contribute to the violation of the General Procurement Law that resulted in the void Contract?

3

We answer the first question in the negative and the second and third in the affirmative. By doing so, we affirm the August 2019 and September 2022 Decisions of the MSBCA.[3]

## BACKGROUND

### I.     The Parties

Because of the overlapping nature of some of the parties, it is important to distinguish them at the outset. GPPS, Inc. is a California-based corporation that develops renewable energy facilities. One of the ways GPPS, Inc. provides renewable energy is to process chicken litter. At the time that GPPS, Inc. was negotiating the PPA, Steve Carpenter was the President and CEO.

MBE is a Maryland limited liability company. It was formed in 2013 after GPPS, Inc. was awarded the PPA and began negotiations with DGS. GPPS, Inc. formed MBE as a special purpose entity for the purpose of the contested project. GPPS, Inc. originally proposed the name "Delmarva Bio Energy, LLC" for its special purpose entity, but DGS asked that the name instead include "Maryland," as it was a Maryland state project. Thus, GPPS, Inc. chose the name "Maryland Bio Energy" instead. After MBE was formed, its

_____

[3] Although DGS also raised a question regarding the MSBCA's jurisdiction over Appellees' expectancy damages claim, we do not reach that issue. Because we hold that the PPA is void, GPPS, Inc. and MBE cannot be awarded expectancy damages for breach of the PPA, and the MSBCA need not assert any jurisdiction over that claim. Therefore, the issue is moot. We also note that after appeal of the expectancy damages decision was noted and after the MSBCA found the PPA void, the MSBCA issued an order declaring the expectancy damages issue moot. Because we agree that the issue is moot, we will not disturb that decision.

only member and manager was GPPS, Inc. However, GPPS, Inc. eventually transferred its membership interest in MBE to GPPS, LLC.

GPPS, LLC is a Delaware limited liability company. Mr. Carpenter formed GPPS, LLC as its only member and manager shortly before the finalization of the PPA. GPPS, Inc. signed its interest in MBE over to GPPS, LLC the same day MBE signed the PPA. At some point, Mr. Carpenter transferred his interest in GPPS, LLC to GPPS, Inc. Currently, GPPS, Inc. owns 83% percent of GPPS, LLC while another party owns the rest. GPPS, LLC still owns all of MBE.  Further below, we diagram the relationship between GPPS, Inc., GPPS, LLC, and MBE.

DGS is Maryland's primary procurement agency. It issued the Request for Proposals ("RFP") and oversaw the negotiations, the finalization of the PPA, and eventually, the termination of the PPA for convenience. Typically, when a dispute between DGS and a contractor arises, the contractor submits a claim to DGS. The head of the procurement unit that oversaw the contract then reviews the claim. *See* SF&P § 15-219. Once DGS resolves a claim, the contractor may appeal DGS's decision to the MSBCA. *See* SF&P § 15-220. The MSBCA's decision is then subject to judicial review, meaning the contractor may appeal to the circuit court. *See* SF&P § 15-211.[4]

---

[4] SF&P § 15-211 provides the MSBCA with jurisdiction to hear appeals "arising from the final action of a unit . . . on a protest relating to the formation of a procurement contract, . . . [or] on a contract claim by a contractor or a unit concerning: (i) breach; (ii) performance; (iii) modification; or (iv) termination."

## II. Request for Proposals, Negotiations, and Finalizing the PPA

In 2011, DGS issued an RFP for the development of a renewable energy facility fueled by animal waste. GPPS, Inc. responded with a technical proposal and a financial proposal (collectively, "proposal"). In its proposal, GPPS, Inc. said that, if awarded the contract, it would serve as the "prime contractor" and "Project Sponsor[.]" GPPS, Inc. claims that it proposed creating a special purpose entity to conduct the project by identifying the facility owner as Delmarva Bio Energy (later MBE), which had not yet been created. Meanwhile, GPPS, Inc. listed itself as the offeror. It said its role in the project would be to manage its special purpose entity and "function as the developer and general contractor." It also provided an organizational chart, staffing overview, and ownership structure for GPPS, Inc.

Just over a year later, on January 25, 2013, DGS sent a letter to GPPS, Inc., informing it that it had been recommended for award of the contract.

Shortly thereafter, DGS sent an initial contract, the PPA, and the parties[5] began negotiations over it. The parties negotiated via meetings, phone calls, and emails. Their emails contain some redlined versions of the PPA, along with explanations of certain changes. Because DGS objected to the name "Delmarva," GPPS, Inc. instead created

---

[5] Because of the lack of differentiation between GPPS, Inc. and MBE during the negotiations, we refer to them jointly as "the GPPS team," as the parties did during their negotiations.

MBE, resulting in the configuration below. GPPS, Inc. notified DGS of MBE's creation on April 8, 2013.



The GPPS team then sent a revised draft of the PPA that replaced each mention of GPPS, Inc. with MBE. It explained in an email that MBE would be the owner of the renewable energy facility and thus "the Counterparty to the PPA." However, GPPS, Inc. assured DGS that GPPS, Inc., as the responding party to the RFP, would control MBE. Subsequent PPA drafts only referenced MBE and not GPPS, Inc.

A few months later, DGS noticed that there was no longer any mention of GPPS, Inc., the original offeror, in the PPA. DGS emailed the GPPS team with a new version of the PPA to include GPPS, Inc. In this new PPA, there were three references to GPPS, Inc. The first reference was on the cover page, where GPPS, Inc. was included in the description of MBE. It said, "Maryland Bio Energy, LLC[,] a wholly owned special purpose entity of Green Planet Power Solutions, Inc., a California Corporation." The second reference was in the description of MBE in the PPA's first paragraph, which listed the parties. This second reference was the same as that on the cover page, i.e., that MBE was wholly owned by GPPS, Inc. The third and final reference was in the signature block at the end of the PPA. After spaces for a DGS signature and an MBE signature,

7

there was a space entitled "Acknowledged and Agreed Green Planet Power Solutions, Inc., a California Corporation[.]"

The GPPS team responded to this version of the PPA with their own changes. They informed DGS that MBE was undergoing a corporate reorganization, after which GPPS, Inc. would only be a majority owner of MBE. The GPPS team changed the description of MBE on the cover page and in the first paragraph. The new description read: "Maryland Bio Energy, LLC[,] a *special purpose subsidiary* of Green Planet Power Solutions, Inc., a California Corporation[.]" (changes emphasized). The GPPS team also removed the GPPS, Inc. signature block from the PPA because, as it told DGS, "[GPPS, Inc.] is not a party to the agreement." However, it informed DGS that "as the controlling party of [MBE], [GPPS, Inc.] of course approves the execution of this agreement by its subsidiary."

One day after sending the revised PPA and the email about MBE's corporate reorganization, Mr. Carpenter formed GPPS, LLC as a Delaware LLC.

On October 3, 2013, Mr. Carpenter—who was, at that time, President and CEO of GPPS, Inc. and the sole member of MBE—signed the final PPA for MBE and sent it back to DGS. On that same day, Mr. Carpenter signed GPPS, LLC's Operating Agreement as the "single member" in his representative capacity as CEO of GPPS, Inc. Also on that same day (but before DGS signed the PPA and thus before the PPA was fully executed), GPPS, Inc. transferred its membership interest in MBE (along with MBE's assets and liabilities) to GPPS, LLC, resulting in the configuration below, which

8

is in place today. The GPPS team did not notify DGS of GPPS, LLC's creation or the transfer of all of GPPS, Inc.'s interest in MBE to GPPS, LLC.



On October 10, DGS signed and finalized the PPA. The parties began to carry it out.

### III.     Termination for Convenience and DGS Proceedings

About two years later, DGS sent a letter to the GPPS team notifying them that DGS was terminating the contract for its convenience, in accordance with clause 2.3 of the PPA. *See also* COMAR 21.07.01.12 (requiring termination for convenience clauses[6] in state procurement contracts other than leases). DGS instructed the GPPS team to cease all work and terminate all subcontracts. DGS also informed the GPPS team that they could submit a claim for damages to DGS pursuant to the termination for convenience provision in the PPA.

---

[6] Convenience clauses, also known as termination for convenience clauses or "T for C" clauses, provide a party with an avenue to terminate a contract without establishing the other party's default. Exemplar language for such clauses is provided in COMAR 21.07.01.12.

Two years after receiving the notice of termination for convenience, GPPS, Inc. and MBE submitted a termination for convenience claim to DGS, seeking approximately six million dollars in reasonable costs and profits. Six months later, DGS notified GPPS, Inc. and MBE that it had denied their "termination claim" because the PPA was void *ab initio*. DGS determined that because the PPA had been awarded to MBE instead of the responsible offeror of the winning proposal, GPPS, Inc., the PPA was void. Under state procurement law, DGS explained, DGS could only form contracts with the responsible offeror of the winning proposal. Since the PPA was not formed with GPPS, Inc., it was void. DGS explained that since the PPA was void, the termination for convenience was a nullity, so MBE could not receive damages pursuant to the termination for convenience provision.[7]

Where a procurement contract is found to be void, prohibiting the recovery of contractual damages, the contractor may instead request statutory damages. SF&P § 11-204(b)(2) provides the remedy for such statutory damages:

> (2) Whenever a procurement contract is void under this subsection, the contractor shall be awarded compensation for actual expenses reasonably incurred under the procurement contract, plus a reasonable profit, if the contractor:
>
> (i) acted in good faith;
>
> (ii) did not directly contribute to a violation of this Division II; and
>
> (iii) had no knowledge of the violation before the procurement contract was awarded.

---

[7] DGS also noted that since GPPS, Inc. was not a party to the PPA, it did not have standing to pursue damages under the PPA.

Therefore, to be awarded statutory damages, MBE had to prove that it acted in good faith, did not directly contribute to the violation (that the responsible offeror was not awarded the contract), and had no knowledge of the violation before being awarded the contract. DGS found, however, that MBE had not carried its burden of proving any of these three elements. Thus, DGS did not award MBE any statutory damages.

## IV. MSBCA and Circuit Court Proceedings

GPPS, Inc. and MBE appealed DGS's decision to the MSBCA. They asserted a claim for breach of contract, alleging that DGS had breached the PPA by declaring it void instead of following the procedure set out in the termination for convenience provision. Regarding this breach of contract claim, GPPS, Inc. and MBE reasserted the damages they had claimed in their termination for convenience claim before DGS; they also added expectancy damages. In the alternative, if the Board found the PPA to be void, GPPS, Inc. and MBE sought statutory damages under SF&P § 11-204(b)(2) of approximately six million dollars for reasonable costs and profits.

DGS then moved for partial summary decision,[8] arguing that GPPS, Inc. and MBE could not receive contract damages because the PPA was void. The PPA was void, DGS argued, because GPPS, Inc., as the responsible offeror of the proposal, was not a party to the PPA. The MSBCA agreed, issuing an Opinion and Order in August of 2019 ("the

---

[8] Summary decision is "the administrative equivalent of a summary judgment entered by a court[.]" *Md. State Highway Admin. v. Brawner Builders, Inc.*, 248 Md. App. 646, 654 (2020), *aff'd* 476 Md. 15 (2021).

11

August 2019 Decision"). Because the PPA was void, the State was not liable to GPPS, Inc. or MBE for breach of contract.[9] The MSBCA reasoned that the mere incorporation of GPPS, Inc.'s proposal into the PPA did not necessarily make GPPS, Inc. a party to the PPA. It emphasized that GPPS, Inc. did not have an intent to be bound by the PPA and even said it was "not a party to the [contract]." In fact, it said, if GPPS, Inc.'s proposal was incorporated into the PPA by reference, that incorporation would only highlight the fact that the responsible offeror was not a party to the PPA. Moreover, said the MSBCA, GPPS, Inc. and MBE were not the same entity because at the point the PPA was executed, GPPS, Inc. no longer owned or controlled MBE.

The MSBCA also concluded that omitting GPPS, Inc. as a party to the PPA was a violation of SF&P 13-104(f).[10] It explained that, contrary to GPPS, Inc.'s contentions, nothing in Maryland procurement law allows the State to award a contract to an offeror's subsidiary rather than the offeror. Because the entire PPA was void, rather than only a single provision, the defect could not be cured. Thus, MSBCA determined, GPPS, Inc.'s

---

[9] Again, we recognize that GPPS, Inc. and MBE did not make their expectancy damages claim before DGS, and DGS argues that the MSBCA thus had no jurisdiction over that claim. However, as above, given that we agree with the MSBCA that the contract is void, the companies' claim for expectancy damages is moot.

[10] SF&P 13-104(f) says: "After obtaining any approval required by law, the procurement officer shall award the procurement contract to the responsible offeror who submits the proposal or best and final offer determined to be the most advantageous to the State considering the evaluation factors set forth in the request for proposals."

12

and MBE's contract claim failed as a matter of law. The MSBCA also dismissed GPPS, Inc. as a party to the appeal since it was not a party to the PPA and thus had no standing.

Following the August 2019 Decision, all that remained of the appeal was MBE's claim for damages under SF&P § 11-204(b). After a hearing on the merits, the MSBCA denied this claim in an Order and Opinion issued in September of 2022 ("the September 2022 Decision"). Under § 11-204(b), for a contractor to succeed on a claim for damages on a void contract, the contractor must prove three elements: that it acted in good faith, that it did not directly contribute to the violation that caused the voidness, and that it had no prior knowledge of the violation when it entered into the contract. The MSBCA explained that MBE failed to prove that it did not directly contribute to the procurement law violation. It reasoned that MBE (and GPPS, Inc.) insisted that MBE be the counterparty to the PPA rather than GPPS, Inc. That DGS accepted the erroneous substitution does not negate MBE's contribution to the violation. But for MBE's insistence, the PPA would not have been awarded to MBE, and SF&P § 13-104(f) would not have been violated. Because MBE did not prove at least one of the three required elements for statutory damages, the MSBCA explained, MBE was not entitled to damages. Therefore, the MSBCA denied MBE's claim.

MBE appealed the denial of its § 11-204(b) claim and the MSBCA's ruling that the PPA was void and that GPPS, Inc. was not a proper party. These decisions proceeded to the Circuit Court for Baltimore City for review.

13

The circuit court reversed the MSBCA's decision that the PPA was void. The court found that GPPS, Inc. and MBE were "one and the same" entity. Because they were one and the same, GPPS, Inc. was a party to the PPA. Also reversed was the MSBCA's decision dismissing GPPS, Inc. as a proper party to the appeal. The circuit court remanded the case for a hearing on the merits of GPPS, Inc.'s and MBE's contract claim.

Because the circuit court found the PPA was not void, it did not reach the issue of whether MBE proved all the requisite elements for statutory damages under SF&P § 11-204(b). Those § 11-204(b) damages are only available when a contract is void. Since this contract was no longer void and GPPS, Inc. and MBE could proceed with their contract damages claim, § 11-204(b) damages were not available to them.

DGS timely noted this appeal.

## DISCUSSION

### I. Standard of Review

In reviewing the questions presented, we review the MSBCA's "decision directly, not the decision of the circuit court." *Comptroller v. Sci. Applications Intern. Corp.*, 405 Md. 185, 192 (2008); *accord Md. State Highway Admin. v. Brawner Builders, Inc.*, 248 Md. App. 646, 657 (2020), *aff'd* 476 Md. 15 (2021) (reviewing an MSBCA decision). We review legal questions under a *de novo* standard of review, and we will only reverse those decisions if they are erroneous as a matter of law. *Md. State Highway Admin. v. Brawner Builders, Inc.*, 248 Md. App. at 657. We also review questions of statutory interpretation *de novo*, but "occasionally apply agency deference when reviewing errors

14

of law related to [whether the agency correctly interpreted an applicable statute or regulation].” *Comptroller v. FC-GEN Operations Invs. LLC,* 482 Md. 343, 360 (2022). *See also In re Featherfall Restoration LLC*, 261 Md. App. 105, 129 (2024), *cert. granted*, No. 67, Sept. Term, 2024, 2024 WL 3330317 (Md. June 17, 2024) (stating that “[a]n agency’s interpretation of a statute it administers, or regulations promulgated under such a statute, typically does receive a degree of deference.”). Moreover, more deference is accorded in instances “when the interpretation resulted from a process of reasoned elaboration by the agency, when the agency has applied that interpretation consistently over time, or when the interpretation is the product of contested adversarial proceedings or formal rule making.” *Md. Dep’t of the Environment v. Assateague Coastal Trust*, 484 Md. 399, 451-52 (2023) (quoting *Comptroller v. FC-GEN Operations Invs. LLC.,* 482 Md. 343, 363 (2022).

Additionally, we review grants or denials of motions for summary decision by the MSBCA under a *de novo* standard. *Md. State Highway Admin. v. Brawner Builders, Inc.*, 248 Md. App. at 657. We uphold such a decision when “there is no genuine dispute of material fact and the moving party was entitled to that disposition as a matter of law.” *Id.* Otherwise, we affirm the decision of the administrative agency if it is supported by substantial evidence and “not erroneous as a matter of law.” *See Comptroller v. Sci. Applications*, 405 Md. at 192 (omitting citation).

That said, our review of an administrative agency’s decision is “narrow[;]” even though we “are not bound by the [MSBCA’s] interpretation of law[,]” we also do not

15

"substitute our judgment for that of the [MSBCA]." *Frey v. Comptroller of the Treasury*, 184 Md. App. 315, 330-31 (2009), *aff'd and remanded sub nom. Frey v. Comptroller of Treasury*, 422 Md. 111 (2011). We recognize that the MSBCA's decision is "prima facie correct and presumed valid[,]" so we review it "in the light most favorable to [the MSBCA.]" *Ramsay, Scarlett & Co., Inc. v. Comptroller of Treasury*, 302 Md. 825, 835 (1985). However, we may only affirm the MSBCA's decision "on the basis of the grounds on which it decided the case." *Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 111 n.1 (2001); *see also Evans v. Burruss*, 401 Md. 586, 593 (2007) ("'[I]n judicial review of agency action[,] the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.'") (quoting *United Steelworkers of America AFL–CIO, Local 2610 v. Bethlehem Steel Corp.*, 298 Md. 665, 679 (1984)), *cert. denied*, 552 U.S. 1187, 128 S. Ct. 1309, 170 L.Ed.2d 73 (2008).

The first question before us is on the voidness of the contract. Because the MSBCA decided this question on a motion for partial summary decision, we review it *de novo*. Regarding the second question, to determine whether the MSBCA correctly interpreted the term "directly contribute" in § 11-204(b), we use a *de novo* standard. The third question concerns whether MBE met its burden of proving that it did not directly contribute to the procurement law violation. If there was substantial evidence to support the MSBCA's decision that MBE failed to meet its burden on the "directly contribute" element, we affirm the MSBCA's decision.

16

## II.    Whether GPPS, Inc. Was a Party to the PPA

GPPS, Inc. and MBE argue that GPPS, Inc. was a party to the PPA, meaning the PPA was not void. They argue that both the RFP and GPPS, Inc.'s proposal are incorporated into the final PPA; they assert that since the proposal lists GPPS, Inc. as the offeror, GPPS, Inc. is a party to the PPA. GPPS, Inc. and MBE also argue that they are the same entity because GPPS, Inc. is the majority owner of, and thus controls, MBE, and they contend that they meet the requirements of SF&P § 12-502 to be considered the same entity.

DGS argues that the MSBCA was correct to rule that GPPS, Inc. was not a party to the PPA and that the PPA was void as a result. According to DGS, the MSBCA was also correct in concluding that incorporation by reference of documents into a contract is insufficient to bind that party to the contract. DGS also asserts that the MSBCA was correct that GPPS, Inc. and MBE are not the same entity and in concluding that SF&P § 12-502 did not apply to treat them as the same.

We agree with the MSBCA that GPPS, Inc. was not a party to the PPA, meaning that the PPA is void. According to SF&P § 13-104(f), the PPA could not have been awarded to MBE because MBE was not "the responsible offeror" of the selected proposal:

> After obtaining any approval required by law, the procurement officer shall award the procurement contract to the responsible offeror who submits the proposal or best and final offer determined to be the most advantageous to the State considering the evaluation factors set forth in the request for proposals.

17

*See also* COMAR 21.05.03.03 ("Upon completion of all discussions and negotiations, the procurement officer shall make a determination recommending award of the contract to the responsible offeror whose proposal is determined to be the most advantageous to the State, considering price and the evaluation factors set forth in the request for proposals."). As the MSBCA explained, while using a subsidiary to perform the PPA would have been permissible, "the contract could [not] be awarded to the subsidiary rather than to the offeror whose proposal was selected for the award." Because DGS awarded the contract to GPPS, Inc. based on its proposal, GPPS, Inc. should have been a party to the PPA. Further, because GPPS, Inc. was not a party to the PPA, in contravention of SF&P § 13-104(f), the PPA is void.

Generally, "[i]t is universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract." *Cochran v. Norkunas*, 398 Md. 1, 14 (2007) (Raker, J.). Further, one of the "most commonsensical principles in all of contract law" is that a party who "voluntarily signs a contract agrees to be bound by the terms of that contract." *Walther v. Sovereign Bank*, 386 Md. 412, 430 (2005) (internal footnote omitted). GPPS, Inc., however, did not sign the PPA. In fact, as the MSBCA pointed out, GPPS, Inc. removed its signature block from the PPA, telling DGS that "it is not a party to the PPA." Moreover, contrary to GPPS, Inc.'s and MBE's argument, any incorporation of the RFP and GPPS, Inc.'s proposal does not make GPPS, Inc. a party to the PPA. That GPPS, Inc. is listed as the offeror in its proposal is insufficient to manifest its assent to be bound, especially when it later said it would not be a party to the PPA.

18

Therefore, GPPS, Inc. did not establish the mutual assent to be bound required of all contracts.

Additionally, we agree with the MSBCA that GPPS, Inc. and MBE are separate entities, and as such, MBE's status as a party to the PPA does not bind GPPS, Inc. to the PPA. To be sure, SF&P § 12-502 outlines some situations in which two entities "shall be considered as the same entity." But this statute applies only to Subtitle 5 of Title 12 of the State Finance and Procurement Article. Subtitle 5 pertains to "Disclosure Requirements Regarding Involvement in Deportation." SF&P § 12-503 (describing the scope of Subtitle 5); *see also* SF&P § 12-502 ("*For purposes of this subtitle*: (1) two or more entities shall be considered the same entity . . . ." (emphasis added)). In fact, SF&P § 12-503 provides that Subtitle 5, including SF&P § 12-502, only applies to entities that "had direct involvement in the deportation of victims[.]" "Direct involvement in the deportation of victims" is defined by SF&P § 12-501 as: "ownership or operation of the trains on which individuals were transported to extermination camps, death camps, or any facility used to transition individuals to extermination camps or death camps, during the period beginning on September 1, 1939, and ending on September 2, 1945." Accordingly, SF&P § 12-502 does not apply to the situation at hand. Further, the MSBCA was correct in finding that GPPS, Inc. and MBE are not "one and the same entity" because even if SF&P § 12-502 applied here (it does not), GPPS, Inc. no longer directly owned MBE,

19

having transferred it to GPPS, LLC before the PPA was executed. *See* SF&P § 12-502 (requiring that one of the entities own at least 50% of the other).[11]

Further, because GPPS, Inc. was not a party to the PPA, it was not a proper party to the appeal. *See* SF&P § 15-211(a)(2) (establishing the jurisdiction of the MSBCA); COMAR 21.10.04.01B(1) (defining a claim before the MSBCA as "a complaint by a contractor or by a procurement agency relating to a contract subject to this title"). Accordingly, we see no error in the MSBCA's decision to dismiss GPPS, Inc. as a party to the appeal.

## III. Whether MBE directly contributed to the procurement law violation

The MSBCA found that MBE failed to prove that it did not directly contribute to the violation of the SF&P that resulted in the PPA being declared void. MBE argues that

---

[11] In reviewing an MSBCA decision, we look through the circuit court's opinion and base our reasoning on the same grounds as the MSBCA. *See Concerned Citizens of Cloverly v. Montgomery Cnty. Plan. Bd.*, 254 Md. App. 575, 598 (2022). In determining whether GPPS, Inc. and MBE were one and the same entity, the MSBCA only discussed SF&P § 12-502—i.e., the statute on which GPPS, Inc. and MBE relied in their arguments before the MSBCA—and the statute's inapplicability to this case. Therefore, in making our decision, we do not discuss the circuit court's reasoning, which was based on principles of corporate law that the MSBCA decision did not discuss.

Nevertheless, to accept GPPS, Inc.'s and MBE's same-entity theory would mean piercing MBE's own corporate veil for its benefit, an unusual theory to say the least. *See Flocco v. State Farm Mut. Auto. Ins.*, 752 A.2d 147, 155 (D.C. 2000) ("[A] corporation may not pierce its own veil, because to do so would have the effect of denying the corporation its own corporate existence." (internal quotations omitted)). Moreover, we fail to see how GPPS, Inc. can simultaneously argue that it created MBE to protect each entity from the liabilities of the other and that MBE is the same entity as GPPS, Inc. If the entities were created to protect each from the other's liabilities, the entities are not the same. If the entities are the same, GPPS, Inc. would not be protected from MBE's liabilities and vice versa.

the MSBCA did not correctly interpret the meaning of the term "directly contribute." The MSBCA found that the term was unambiguous and cited the dictionary definitions of "directly" as "in a direct . . . way, or manner" and "contribute to" as "to be an important step in; help to cause." Citing cases from the District of Columbia and New Mexico, MBE argues that the MSBCA should have instead looked to the precedent of sister states in interpreting the term. MBE also argues that there was not substantial evidence to support the MSBCA's finding that MBE failed to prove it did not directly contribute to the violation. It asserts that DGS had the exclusive power to accept the terms and conditions of the PPA, so MBE did not contribute to the violation.

On the other hand, DGS argues that the cases cited by MBE offer no support for its interpretation of "directly contribute" in this case. It also argues that there was substantial evidence in the record to support the MSBCA's finding that MBE did not prove it did not directly contribute to the violation. We agree with DGS and the MSBCA.

SF&P § 11-204(b)(2) provides the elements MBE had to prove in order to be awarded statutory damages. These are that MBE:

> (i) acted in good faith;
>
> (ii) did not directly contribute to a violation of this Division II; and
>
> (iii) had no knowledge of the violation before the procurement contract was awarded.

As the MSBCA pointed out, "[a]s the party making an affirmative claim, MBE has the burden to prove that all three prongs of § 11-204(b)(2) are met. . . . If any one of the three

elements is not satisfied, there can be no recovery." (citing *Operations Rsch., Inc. v. Davidson & Talbird, Inc.*, 241 Md. 550, 574 (1966)).

In interpreting a statute, "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Al Czervik, LLC v. Mayor & City Council of Baltimore*, 259 Md. App. 91, 102 (2023). "If the statute is free of ambiguity, we generally will not look beyond the words of the statute to determine legislative intent." *Md.-Nat. Cap. Park & Plan. Comm'n v. Anderson*, 164 Md. App. 540, 569 (2005), *aff'd*, 395 Md. 172 (2006). In other words, "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Junek v. St. Mary's Cnty. Dep't of Soc. Servs.*, 464 Md. 350, 358 (2019). Further, we afford some deference to the MSBCA in its interpretation of the statute because "[an agency's, here the MSBCA's] interpretation of a statute it administers, or regulations promulgated under such a statute, typically does receive a degree of deference." *Featherfall*, 261 Md. App. at 129.[12]

---

[12] In addition to reviewing an agency's factual findings and inferences under a substantial evidence standard, an agency's decision is also reviewed for errors of law. *FC-GEN Operations Invs.*, 482 Md. at 360. "The phrase 'errors of law' encompasses a variety of legal challenges," including: "(1) the constitutionality of an agency's decision; (2) whether the agency had jurisdiction to consider the matter; (3) whether the agency correctly interpreted and applied applicable case law; (4) and whether the agency correctly interpreted an applicable statute or regulation." *Id.* Courts do not apply any agency deference when reviewing the first three types of legal challenges, but "occasionally apply agency deference when reviewing errors of law related to the fourth category." *Id.* The case at bar falls into the fourth category, and as such, we accord

With those principles in mind, we agree with the MSBCA that the term "directly contribute" is clear and unambiguous.[13] Therefore, we shall give it its plain meaning according to the dictionary definitions set out by the MSBCA. "Directly contribute" thus means "to be an important step in [or] help to cause" something "in a direct way or manner."

Even if we look beyond the plain language of the statute to consider the out-of-state cases that MBE cites, our interpretation of the statute would not change. MBE first cites *Renaissance Office, LLC v. State, General Services Department, Property Control Division*, 31 P.3d 381, 387 (N.M. 2001). However, the New Mexico statute that the Court of Appeals of New Mexico analyzed is not comparable to SF&P § 11-204(b). In particular, the New Mexico statute does not require that the contractor prove it did not

---

deference to the agency in our review. We must then determine how much weight to give the agency's interpretation. *Md. Dep't of the Environment v. Assateague Coastal Trust*, 484 Md. 399, 451 (2023). The Court applies a "sliding-scale approach," in which the weight given to the agency's interpretation depends on a number of factors. *Id.*; *In re Md. Off. of People's Couns.*, 486 Md. 408, 441 (2024). "We give more weight when the interpretation resulted from a process of reasoned elaboration by the agency, when the agency has applied that interpretation consistently over time, or when the interpretation is the product of contested adversarial proceedings or formal rule making." *Assateague Coastal Trust*, 484 Md. at 451–52.

[13] An agency interpretation that "resulted from a process of reasoned elaboration by the agency" or "is the product of contested adversarial proceedings" is afforded additional weight. *See Assateague Coastal Trust*, 484 Md. at 452. Here, we give the MSBCA's interpretation of "directly contribute" such weight, as this interpretation resulted from a merits hearing before the MSBCA that involved adverse parties and contested issues, and the MSBCA explained its reasons for this interpretation in its September 2022 Decision.

23

"directly contribute" to the violation.[14] Since the term "directly contribute" is the crux of the MSBCA's finding against MBE, *Renaissance* is inapposite.

Regarding the final question before us, there was substantial evidence to support the MSBCA's finding that MBE failed to carry its burden of proving it did not directly contribute to the violation. The violation in this case was not including GPPS, Inc. as a party to the PPA. The GPPS team was the party that originally made the substitution of MBE for GPPS, Inc. in the PPA. By asking DGS to substitute it for GPPS, Inc., MBE caused DGS to do so. Further, once DGS realized there were no longer references to GPPS, Inc., as the winning offeror, MBE and GPPS, Inc. explained that GPPS, Inc. would not be a party to the contract but that GPPS, Inc., as the owner of MBE, approved of the PPA. This explanation is another instance of MBE, at least in part, directly causing DGS to keep GPPS, Inc. from being a party to the PPA. Thus, as the MSBCA found,

---

[14] That New Mexico statute provides:

> If after the execution of a valid, written contract by all parties and necessary approval authorities, the state purchasing agent or a central purchasing office makes a determination that a solicitation or award of the contract was in violation of law and if the business awarded the contract did not act fraudulently or in bad faith:
>
> A. the contract may be ratified, affirmed and revised to comply with law, provided that a determination is made that doing so is in the best interests of a state agency or a local public body; or
>
> B. the contract may be terminated, and the contractor shall be compensated for the actual expenses reasonably incurred under the contract plus a reasonable profit prior to termination.

N.M. Stat. Ann. § 13-1-182 (2024).

"[b]ut for GPPS, Inc.'s and MBE's actions, the PPA would have been awarded to GPPS, Inc., not to MBE."

The MSBCA contrasted MBE's case with a previous MSBCA decision: *Reliable Janitor Services*, MSBCA 1247 (1986). In that case, a state agency refused to pay a janitor services company because it had not provided the total number of labor hours agreed upon in the contract. However, the MSBCA found the contract void because it had failed to include certain provisions required for contracts with the State under COMAR. The MSBCA found that the janitor services company had not contributed to the violation because it had played no part in omitting the required provisions. Conversely, here, MBE is the party that requested that GPPS, Inc. be left out of the PPA, which omission was what ultimately voided the contract. Therefore, unlike the janitor services company, MBE requested the omission that violated the procurement law, meaning MBE directly contributed to the violation.

MBE argues that DGS had exclusive authority over the process, and therefore, DGS alone was responsible for the violation. For this proposition, MBE cites *Protest of AA Pipeline Cleaners, Inc.*, DCCAB No. P-315, 1992 WL 695517 (D.C.C.A.B. Nov. 5, 1992).[15] In that case, the D.C. Contract Appeals Board held that the government had wrongly awarded a contract to a contractor. It then held that the contractor had acted in good faith and had not directly contributed to the violation. As in *Reliable Janitor*

_____

[15] MBE urges we also use this case as persuasive authority in interpreting the meaning of "directly contribute," but the D.C. Contract Appeals Board did not engage in statutory interpretation of that term in this case.

*Services*, though, the contractor in *AA Pipeline* did not help to cause the violation of the contract. The award of a contract to a contractor is up to the government, i.e., the unilateral action of the government, so the D.C. agency bore the responsibility for ensuring its *award* would not violate procurement law.

This case is not about an *award* made in violation of the law, however. In other words, there is no suggestion of invalidity in DGS's recommendation that GPPS, Inc. be awarded the contract. Instead, this case concerns a contract that was entered into after the award was made. Indeed, the PPA was entered into after months of negotiation from both sides and after MBE requested the change that voided the PPA. Moreover, in Maryland, "[t]hose who contract with a public agency, . . . are presumed to know the limitations on that agency's authority and bear the risk of loss resulting from unauthorized conduct by that agency." *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.*, 344 Md. 85, 95 (1996). MBE is thus presumed to have known that DGS was only allowed to contract with the winning offeror. MBE has thus not shown that it did not directly contribute to the violation in the final PPA, especially where there was evidence showing it was MBE that wanted DGS to contract with someone other than the winning offeror.

**CONCLUSION**

Because GPPS, Inc. was not a party to the PPA, it was void, and GPPS, Inc. was not a proper party to the appeal before the MSBCA. Additionally, the term "directly contribute" is clear and unambiguous, and there was substantial evidence to support the MSBCA's finding that MBE failed to prove that it did not directly contribute to the

26

procurement law violation that rendered the PPA void. Therefore, we affirm the August

2019 and September 2022 Decisions of the MSBCA.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO AFFIRM THE MSBCA's AUGUST 2019 AND SEPTEMBER 2022 DECISIONS. COSTS TO BE PAID BY APPELLEE.**